AB:PP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 269-910-9005, WITH MEID-DEC NUMBER 256691868909967218, THAT IS STORED AT PREMISES CONTROLLED BY SPRINT CORPORATION | **Filed Under Seal**<br><br>**SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION**<br><br>Case No. 19-M-192 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, GEORGE LANE, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 269-910-9005, with MEID-DEC number is 256691868909967218 ("the SUBJECT PHONE"), that is stored at premises controlled by Sprint Corporation, a wireless telephone service provider headquartered at 6480 Sprint Parkway Overland Park, KS  66251 (the "Provider").  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Provider to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2018.  Previously, I worked as a Police Officer for the Philadelphia Police Department for approximately eight years. I am currently assigned to the Violent Crimes Task Force with the FBI.  In that position, I have had significant training and experience investigating a wide range of crimes involving violence and threats of violence, including threats made by telephone, online and through other electronic means.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2261A(1) and (2) (stalking) and 18 U.S.C. § 875(c) (threatening interstate communications) have been committed by FRANK SEGUI.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

5.      Between approximately Fall of 2013 until Summer of 2016, the defendant FRANK SEGUI was a graduate student at a University located within the Western District of

2

Michigan (the "UNIVERSITY"). At the UNIVERSITY, the defendant was a research assistant for a professor ("JOHN DOE").

6.      By at least October 2015, the defendant FRANK SEGUI became very angry with the JOHN DOE and blamed JOHN DOE for his lack of success at the UNIVERSITY. In October 2015, the defendant sent an email to JOHN DOE, copying numerous other individuals at the UNIVERSITY, listing his grievances with JOHN DOE and stating that JOHN DOE had broken numerous promises to him.

7.      At some point after this email was sent, an individual at the UNIVERSITY told the defendant FRANK SEGUI that he could receive a Master's Degree but could no longer continue his other graduate studies at the UNIVERSITY.

8.      In approximately June 2018, the defendant FRANK SEGUI moved back from Michigan to Brooklyn to live with his parents where he resided until in or about February 2019.

9.      On or about October 30, 2018, the defendant FRANK SEGUI sent an email to JOHN DOE, copying other members of the UNIVERSITY. In this email, the defendant wrote, in part, "It's now been 3 years and you people will still not leave me alone. [JOHN DOE] or one of you mother fuckers is telling every person I contact not to hire me. . . . I get it. This is a thing you universities do. . . . First you push them away them you do whatever you can to make them come back to you even if it means ruining their life even if they beg you leave them alone. You need to understand someone though. You're all monsters. You don't deserve life. The world would be better without you. [JOHN DOE] I'm so glad that son of yours is a mute deformed autistic little shit. That's probably god's way of putting you in

3

place. . . . What's fucked up is I know you guys covered your tracks anything short of tying

you down and cutting off your fingers there no way you will ever admit to any wrong doing.

You'll just claim I'm crazy and continue ruining my life till the day I die. . . ."

10.     JOHN DOE told law enforcement that, when he received this email in October

2018, he felt threatened and fearful for his safety and the safety of his son, especially because

the defendant specifically mentioned JOHN DOE's son in the email. Based on his

interactions with the defendant FRANK SEGUI, JOHN DOE felt that this was a credible

threat from the defendant.

11.     On or about February 22, 2019, the defendant FRANK SEGUI travelled to the

Port Authority Bus Terminal in Manhattan and had a ticket to take a bus from New York to

Detroit, Michigan. While at the bus terminal, the defendant was arrested for disorderly

conduct by a Port Authority of New York and New Jersey Police Officer. The defendant

also resisted arrested.

12.     Following his arrest, the defendant FRANK SEGUI was given Miranda

warnings and agreed to speak with law enforcement. The defendant then stated, in sum and

substance and in part, that he was planning on going to Michigan to kill JOHN DOE. The

defendant stated that he had previously purchased an axe on the internet to kill JOHN DOE,

but he did not have access to it because it was his parents' apartment in Brooklyn and,

following a fight with them three to four days earlier, to which he could not return. He also

stated that, therefore, when he got to Michigan, he would go to a hardware store in the city

where the UNIVERSITY is located to purchase another axe and that he would use that axe to

kill JOHN DOE.  The defendant also stated which motel he would stay at before killing JOHN DOE.

13.     The defendant FRANK SEGUI also stated in this interview that he had been monitoring JOHN DOE's publicly available teaching schedule so that he could follow JOHN DOE's locations throughout the day and be able to locate JOHN DOE in order to kill him.

14.     Law enforcement spoke to the defendant's father.  The defendant's father stated that he had recently kicked out the defendant from his house and that he was not welcome to return.  Law enforcement subsequently received from the defendant's father consent to search the defendant's former room and closet at his parents' apartment in Brooklyn.  Upon executing the search, law enforcement located the axe purchased on the internet as described by the defendant, as well as the sheath that contained the axe and the packaging for the axe addressed to the defendant.

15.     The defendant FRANK SEGUI was ultimately not charged by state authorities for disorderly conduct and resisting arrest.  On February 23, 2019, upon his release from state custody, the FBI arrested the defendant.  On February 25, 2019, the defendant was charged by Complaint with violations of 18 U.S.C. § 2261A(2) (stalking) and 18 U.S.C. § 875(c) and was ordered detained by the Honorable Steven L. Tiscione.

16.     The defendant's cell phone was seized incident to his arrest by Port Authority Police.  The defendant stated to the FBI that his phone number is 269-910-9005, and Port Authority Police determined that the MEID-DEC number for this phone is 256691868909967218.  The phone is an ANS UL40.

5

17.     A search warrant for cell site information for October 30-October 31, 2018, and for February 18-22, 2019 will provide evidence of SEGUI's location when he sent the threatening interstate communication on October 30, 2018; and his location while he was beginning to travel from New York to Michigan with the intent to kill JOHN DOE.

18.     In my training and experience, I have learned that the Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

19.     Based on my training and experience, I know that the Provider can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as the Provider typically collect and retain cell-site data in their normal course of business.

20.     Based on my training and experience, I know that wireless providers such as the Provider typically collect and retain information about their subscribers in their normal

6

course of business.  This information can include basic personal information about the subscriber, such as name, address and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as the Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

21.     Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22.     I further request that the Court direct the Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody or control.  Because the warrant will be served on the Provider, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23.     I further request that the Court order all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation, the extent of which is neither public

nor known to the target of the investigation.  Accordingly, there is good cause to seal these

documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

GEORGE LANE
Special Agent
FEDERAL BUREAU OF
INVESTIGATION

Subscribed and sworn to before me on March 1st, 2019

/s/ SLT

HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

8

## ATTACHMENT A

### Property to be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 269-910-9005, with MEID-DEC number is 256691868909967218 ("the Account"), that is stored at premises controlled by Sprint Corporation, a wireless telephone service provider headquartered at 6480 Sprint Parkway Overland Park, KS  66251 (the "Provider").

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period October 30-October 31, 2018, and February 20-22, 2019:

a.    The following information about the customers or subscribers of the Account:

   i.    Names (including subscriber names, user names and screen names);

   ii.    Addresses (including mailing addresses, residential addresses, business addresses and e-mail addresses);

   iii.    Local and long distance telephone connection records;

   iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.    Length of service (including start date) and types of service utilized;

   vi.    Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI") or International Mobile Equipment Identities ("IMEI");

   vii.    Other subscriber numbers or identities (including the registration IP address); and

2

        viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  The date and time of the communication, the method of the communication and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        ii.  Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 2261A(1) and (2) (stalking) and 18 U.S.C. § 875(c) involving Frank Segui during the period October 30-October 31, 2018, and February 20-22, 2019.